Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2227 | **DATE** | 9/14/2001 |
| **CASE TITLE** | Abbell Credit Corporation vs. Banc of America Securities | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion to dismiss (11-1) is granted in part and denied in part. Plaintiffs' are given until October 15, 2001 to file a second amended complaint as to counts II and V; failure to do so will result in their dismissal with prejudice. Defendants' motion for a more definite statement(11-2) is granted. Plaintiffs' motion to strike(17-1) portions of defendants' reply brief is granted. Enter memorandum opinion and order.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 17 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 20 |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 SEP 14 AM 10:50 | SEP 17 2001 | |
| SLB | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ABBELL CREDIT CORP.,                           )
an Illinois corporation, MERLE HAY MALL,       )
an Iowa limited partnership, WESTGATE          )
VILLAGE SHOPPING CENTER, an Illinois           )
limited partnership, and J. WILLIAM            )
HOLLAND, an individual,                        )
                                               )
                    Plaintiffs,                )
                                               )      01 C 2227
             v.                                )
                                               )      Judge George W. Lindberg
BANC OF AMERICA SECURITIES,                    )
L.L.C., a Delaware corporation,                )
and MATT WILLIAMS, an individual,              )
                                               )
                    Defendants.                )

**MEMORANDUM OPINION AND ORDER**

Defendants Banc of America Securities, L.L.C. ("BAS") and Matt Williams ("Williams"), have moved pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(e) to dismiss plaintiffs' amended complaint or to require plaintiffs to file a more definite statement of their claim. For the reasons stated below, the motion to dismiss is granted in part and denied in part.

**I.  Factual Background**

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in plaintiff's favor. MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 972 (7th Cir. 1995). According to the allegations in the amended complaint, plaintiff Abbell Credit Corporation ("Abbell")[1] is the

---

[1] The amended complaint indiscriminately labels both Abbell Credit Corporation individually, as well as all four plaintiffs collectively, as "Abbell." This practice is the subject of defendants' motion to require a more definite statement, which is granted.



managing agent for plaintiffs Merle Hay Mall ("Merle Hay") and Westgate Village Shopping Center ("Westgate"). Abbell is also a general partner of Merle Hay. Plaintiff J. William Holland ("Holland") is the managing general partner of Merle Hay and Westgate, and is the chairman of Abbell's board of directors. Defendant BAS is a securities brokerage enterprise, and a wholly-owned subsidiary of Bank of America Corporation. Williams is a registered securities broker employed by BAS.

Among its other duties, Abbell is responsible for investing excess cash balances generated by Merle Hay and Westgate. Abbell effectuated these investments through BAS or its predecessor entity. Since 1984, Abbell has invested the excess cash balances by purchasing commercial paper with a maturity date of less than sixty days. For each such transaction, Abbell only purchased short-term commercial paper recommended by BAS as creditworthy and having the highest quality rating of A1/P1, to ensure the fiscal soundness of the investment. Abbell's investment criteria and strategies have not varied since 1984. According to plaintiffs, BAS and Williams knew or should have known that Abbell only purchased the highest quality short-term commercial paper.

On at least one occasion in the past, Abbell has requested that BAS refund a piece of commercial paper prior to maturity. At that time, BAS refunded to Abbell the discount rate available on the trade date for the number of days from the date of purchase to the refund date, charging Abbell a nominal fee for the prepayment.

On November 29, 2000, Abbell contacted Williams, seeking to purchase a nearly $1.8 million piece of commercial paper on behalf of Merle Hay, and a nearly $150,000 piece of commercial paper on behalf of Westgate. Abbell asked Williams to recommend short-term commercial paper of only the highest quality.

Williams recommended that Abbell purchase two pieces of short-term commercial paper issued by Pacific Gas & Electric ("PG&E"). Williams stated that PG&E offered a sixty-day commercial paper at a discount rate of 6.4%, with a maturity date of January 29, 2001. Williams

told Abbell that PG&E was creditworthy and was rated A1/P1. Williams did not inform Abbell that in October 2000, Bank of America had provided PG&E a $1 billion credit facility to underwrite its commercial paper program, and that this credit facility was the primary reason why PG&E's short-term commercial paper maintained an A1/P1 rating. The complaint does not identify the specific person at Abbell with whom Williams had this conversation.

Based on the information provided by Williams, and his recommendation, Abbell purchased two pieces of PG&E commercial paper on behalf of Merle Hay and Westgate, for a total of approximately $1.95 million. Following the purchase, BAS did not send Abbell a commercial paper memorandum, confirming the terms of the agreement and including a general description of financial credit available to the issuer; Abbell would typically receive such a commercial paper memorandum seven to ten days after a purchase of commercial paper.

California's energy crisis accelerated in late December 2000 and early January 2001. In early January 2001, Abbell learned that Bank of America's $1 billion credit facility formed the primary reason for PG&E's commercial paper's A1/P1 rating. Between January 8 and January 12, 2001, Abbell asked Williams to refund the PG&E commercial paper early. Williams declined, and informed Abbell that the market price for PG&E's commercial paper was then $0.75 per purchase dollar. On January 17, 2001, Abbell learned that the PG&E commercial paper had been downgraded to junk status, and reiterated to BAS its demand to sell. On January 18, 2001, the market did not generate a bid for Abbell's PG&E commercial paper, and on January 19, 2001, the market bid was $0.53 per purchase dollar. On January 22, 2001, Abbell contacted BAS in an attempt to sell the PG&E commercial paper, but was informed by Williams that he could not locate the previous $0.53 market bid. BAS told Abbell that bids were not forthcoming for commercial paper already in default. Later that day, Abbell sold the PG&E commercial paper to BAS for $0.50 per purchase dollar, for a total loss of $964,600.

## II. Standing of Abbell and Holland

Defendants first contend that because the commercial paper was purchased in the names

3

of Merle Hay and Westgate, Abbell and Holland did not suffer any actual injury and therefore lack standing to bring this action. In order to have standing to have a claim heard by a federal court under Article III of the Constitution, a party must have suffered some actual or threatened injury as a result of the defendant's conduct. Foster v. Center Township, 798 F.2d 237, 241-42 (7th Cir. 1986).

Although defendants' argument might have been persuasive against Abbell if Abbell were merely an agent for the limited partnerships, defendants' argument ignores Abbell and Holland's status as general partners of the limited partnerships. As general partners, Abbell and Holland do suffer financial harm when the limited partnerships are injured. Their presence in this case may well be redundant, since the limited partnerships are also plaintiffs, but this does not mean that they were not injured. Defendants' motion to dismiss the complaint as to Abbell and Holland for lack of standing is denied.[2]

### III. Rule 12(b)(6) Motion to Dismiss

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must consider "whether relief is possible under any set of facts consistent with the allegations of the plaintiff's complaint." Pokuta v. Trans World Airlines, Inc., 191 F.3d 834, 839 (7th Cir. 1999). That is, if it is possible to hypothesize a set of facts that would entitle the plaintiff to relief, consistent with the allegations in the complaint, dismissal under Rule 12(b)(6) is inappropriate. See Graehling v. Village of Lombard, Ill., 58 F.3d 295, 297 (7th Cir. 1995). "[A]lthough plaintiffs can plead conclusions, the conclusions must provide the defendant with at least minimal notice of the claim." Jackson v. Marion County, 66 F.3d 151, 154 (7th Cir. 1995). A plaintiff can "plead himself out of court by alleging facts which show that he has no claim." Id.

---

[2] In response to an argument by plaintiffs, defendants argue in the alternative that Abbell and Holland are not real parties in interest under Fed. R. Civ. P. 17(a). Again, defendants focus on the agency relationship between Abbell and the limited partnerships, and do not explain why, as general partners, Abbell and Holland would not be real parties in interest.

4

### A. Securities Act of 1933, Section 12(2) (Count I)

Defendants argue that Count I, alleging a violation of Section 12(2) of the Securities Act of 1933, should be dismissed because it fails to allege an untrue statement or omission of a material fact by means of a prospectus.[3] Section 12(2) provides for liability of any person who "offers or sells a security...by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading..." 15 U.S.C. § 77l(2). As used in Section 12(2), "prospectus" is "a term of art referring to a document that describes a public offering of securities by an issuer or controlling shareholder." Gustafson v. Alloyd Co., 513 U.S. 561, 584 (1995). Similarly, in the context of Section 12(2), an "oral communication" has been limited to oral communications relating to a prospectus. Id. at 567-68.

Although plaintiffs argue that the conduct alleged here was in connection with the public sale of commercial paper, the alleged misrepresentations and omissions were made by a broker who was recommending the purchase of commercial paper to a customer. The complaint does not allege that the broker's representations were held out to the public. Because the complaint does not allege that the misrepresentations and omissions were made by means of a prospectus, Section 12(2) of the 1933 Securities Act does not apply, and Count I must be dismissed with prejudice.

### B. Securities Act of 1934, Section 10(b) (Count II)

Defendants next argue that Count II, alleging a violation of Section 10(b) of the Securities Exchange Act of 1934, should be dismissed because the short-term commercial paper involved in this case does not constitute a "security" under Section 3(a)(10) of the 1934 Securities Act. The

---

[3] In their reply brief, defendants also argue that Count I fails to satisfy the pleading requirement of Fed. R. Civ. P. 9(b). Arguments made for the first time in a reply brief are waived. See, e.g., Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 597 (7th Cir. 1997), cert. denied, 522 U.S. 1116 (1998); Petri v. Gatlin, 997 F. Supp. 956, 977 (N.D. Ill. 1997). Defendants' motion to strike this argument is granted.

5

1934 Act defines a "security" as "any note,...investment contract,...or in general, any instrument commonly known as a 'security'," but excludes "currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited." 15 U.S.C. § 78c(a)(10).

Defendants contend that the short-term commercial paper that is the subject of this case is not a security because it had a maturity date of sixty days, citing Reves v. Ernst & Young, 494 U.S. 56 (1990). In Reves, however, the Supreme Court reviewed an instrument that it presumed to have a maturity date greater than nine months, and left open the question of what the result would have been had that note's maturity date been less than nine months. Reves, 494 U.S. at 951 n.3, 954. Thus, this court must find its guidance on the issue in the Seventh Circuit's decision in Sanders v. John Nuveen & Co., 463 F.2d 1075 (7th Cir.), cert. denied, 409 U.S. 1009 (1972).

In Sanders, the court analyzed whether certain short-term commercial paper constituted a "security" under the 1934 Act. Sanders, 463 F.2d at 1077-80. The court looked to the Securities and Exchange Commission's interpretation of the 1933 Securities Act's exemption of short-term commercial paper, which applied that exemption only to "(1) prime quality negotiable commercial paper (2) of a type not ordinarily purchased by the general public, that is, (3) paper issued to facilitate well recognized types of current operational business requirements and (4) of a type eligible for discounting by Federal Reserve banks." Id. at 1079. The court then clarified that Congress intended the exemption to apply to the type of commercial paper that is purchased by a bank from a prospective borrower who gives his note to the bank in consideration for a loan. Id. at 1080. By contrast, the exemption is not intended to apply to investment securities, such as where a person who seeks to invest his money receives a note for it. Id.

At this early stage of litigation, it is premature to decide whether the commercial paper involved in this case meets the standard outlined in Sanders. The motion to dismiss Count II on

this basis is denied.

As an alternative ground for dismissing Count II, defendants argue that the allegations in that count fail to comply with the pleading requirements established for scienter in securities fraud cases by the Private Securities Litigation and Reform Act of 1995 ("PSLRA"). The PSLRA establishes a standard even more rigorous that that established in Rule 9(b): a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Plaintiffs assert that scienter can be established by a motive and an opportunity to commit fraud, or by alleging facts which show strong circumstantial evidence of misbehavior or recklessness.

Plaintiffs have failed to allege sufficient facts to establish scienter even using the standard they offer. Plaintiffs allege that defendants knew that PG&E was not creditworthy based on BAS's subsidiary relationship to the entity that extended a credit facility to PG&E, and that Williams nevertheless told Abbell that PG&E was creditworthy in an effort to serve the interests of BAS's parent company. They do not allege that Bank of America communicated with BAS regarding underwriting PG&E's commercial paper program or otherwise allege facts which would show scienter. The conclusory allegations in the complaint are not enough to satisfy the stringent pleading requirements of the PSLRA. Therefore, Count II is dismissed without prejudice.

### C. Securities Act of 1933, Section 17(a) (Count III)

Count III, alleging a violation of Section 17(a) of the Securities Act of 1933, does not state a claim upon which relief may be granted because there is no implied private right of action under that section. Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990); Schlifke v. Seafirst Corp., 866 F.2d 935, 942-43 (7th Cir. 1989). Accordingly, defendants' motion to dismiss Count III is granted, with prejudice.

### D. Common Law Fraud (Count V)

Defendants next move to dismiss Count V for failure to adequately plead the

7

circumstances constituting the alleged fraud under Fed. R. Civ. P. 9(b), which requires that these circumstances be stated with particularity. Rule 9(b) requires plaintiffs to allege the parties to the misrepresentation; the time, place and content of the misrepresentation; and the method by which the misrepresentation was communicated to the plaintiff. Corley v. Rosewood Care Ctr., Inc., 142 F.3d 1041, 1050-51 (7th Cir. 1998); Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 777 (7th Cir. 1994). That is, a plaintiff must state "the who, what, when, where, and how: the first paragraph of any newspaper story." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.), cert denied, 498 U.S. 941 (1990). A "'brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants'" satisfies the requirements of Rule 9(b). Gaffrig Performance Indus., Inc. v. Livorsi Marine, Inc., 2001 WL 709483 at *5 (N.D. Ill. 2001) (quoting Koulouris v. Estate of Chalmers, 790 F. Supp. 1372, 1374-75 (N.D. Ill. 1992)).

Plaintiffs here allege that Williams misrepresented the creditworthiness of PG&E, and allege the date the misrepresentation was made and the method by which it was made. However, they fail to allege to whom the misrepresentation was made, other than that it was made to "Abbell," a group entity encompassing all the plaintiffs. Count V therefore fails to meet the requirements of Rule 9(b), and is dismissed without prejudice.

### E. Negligence (Count VI)

Defendants argue that Count VI, alleging negligence, should be dismissed because it seeks the recovery of economic loss, which is not recoverable under a negligence theory. Plaintiffs respond that the economic loss doctrine does not apply because defendants are in the business of supplying information for the guidance of others in their business transactions.

Illinois law generally prohibits recovery in tort for purely economic loss. Moorman Mfg. Co. v. National Tank Co., 435 N.E.2d 443, 448 (Ill. 1982). An exception is made, however, for negligent misrepresentations made by defendants who are in the business of supplying information for the guidance of others. Id. at 452. To determine the applicability of this exception, the court must examine whether the defendant truly is in the business of supplying

8

information, or whether the defendant instead provides the information "ancillary to the sale or in connection with the sale of merchandise or other matter." Fireman's Fund Ins. Co. v. SEC Donohue, Inc., 679 N.E.2d 1197, 1201 (Ill. 1997). In this regard, providers of financial services present a difficult problem, since "there is a very thin line between an exchange of information about finances and actual financial transactions." Rankow v. First Chicago Corp., 870 F.2d 356, 364 (7th Cir. 1989). Accordingly, "it is particularly important in these settings to examine the particular information and transactions involved case by case." Id.

Here, plaintiffs allege that defendants provided information and recommendations regarding the availability of high quality short-term commercial paper, as well as selling the commercial paper to plaintiffs. This allegation is enough to withstand a motion to dismiss; whether defendants are in the business of supplying information to the extent that the economic loss rule does not apply is a question better left for summary judgment.

### F. Breach of Contract and the Duty of Good Faith and Fair Dealing (Counts VII and VIII)

Defendants argue that Count VII, alleging breach of contract, should be dismissed because it fails to adequately allege the existence of a contract, and the contractual terms that were breached. Defendants do not specify what they believe is lacking. The complaint alleges that BAS agreed to recommend commercial paper purchases consistent with Abbell's investment objectives; Abbell in turn agreed to pay BAS through commissions and service charges; BAS recommended a purchase of commercial paper inconsistent with Abbell's investment objectives, thereby breaching its contract with Abbell; and plaintiffs suffered damages as a result. Plaintiffs sufficiently allege breach of contract.

Defendants also contend that Count VII should be dismissed as to Williams, under the rule that officers and employees are not personally responsible for corporate obligations. As plaintiffs point out, however, such individuals may be personally liable for their company's fraud where those individuals personally and affirmatively participated in the fraud. See First Nat'l

Bank of Boston v. Heuer, 702 F. Supp. 173, 176 (N.D. Ill. 1988); McIntosh v. Magna Sys., Inc., 539 F. Supp. 1185, 1192 (N.D. Ill. 1982). Plaintiffs allege in the complaint that Williams personally misrepresented material facts. The motion to dismiss Count VII as to Williams is denied.

Finally, defendants correctly note that Count VIII, alleging breach of an implied duty of good faith and fair dealing, fails to state a claim under Illinois law. While Illinois law imposes an obligation of good faith in all contracts, it does not create an independent cause of action for a breach of that obligation. Echo, Inc. v. Whitson Co., 121 F.3d 1099, 1105-06 (7th Cir. 1997). This duty may be relevant to plaintiffs' breach of contract claim, but cannot stand alone. Accordingly, Count VIII is dismissed with prejudice for failure to state a claim.

**ORDERED:** The motion to dismiss the complaint as to Abbell and Holland for lack of standing is denied. The motion to dismiss for failure to state a claim is granted as to Counts I, II, III, V, and VIII, and denied as to Counts VI and VII. Plaintiffs are given thirty days from the entry of this order to amend Counts II and V; failure to do so will result in their dismissal with prejudice. Defendants' motion for a more definite statement, to remove references to plaintiffs collectively as "Abbell," is granted. Plaintiffs' motion to strike portions of defendants' reply brief is granted.

ENTER:

George W. Lindberg
United States District Judge

DATED: SEP 13 2001