# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2227 | **DATE** | 2/28/2002 |
| **CASE TITLE** | Abbell Credit Corporation vs. Bank of America Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motions to dismiss the second amended complaint (33-1 and 35-1) is granted in part and denied in part. Defendant Williams' motion for judgment on the pleadings (33-3) is denied. Defendants' motion to strike (33-2 and 35-2) is granted in part and denied in part. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 0 1 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ABBELL CREDIT CORP.,　)
an Illinois corporation, MERLE HAY MALL,　)
an Iowa limited partnership, WESTGATE　)
VILLAGE SHOPPING CENTER, an Illinois　)
limited partnership, and J. WILLIAM　)
HOLLAND, an individual,　)
　)
　　　　Plaintiffs,　)
　)　　01 C 2227
　　v.　)
　)　　Judge George W. Lindberg
BANK OF AMERICA CORPORATION,　)
a Delaware corporation, BANC OF AMERICA　)
SECURITIES, L.L.C., a Delaware corporation,　)
and MATT WILLIAMS, an individual,　)
　)
　　　　Defendants.　)

**MEMORANDUM OPINION AND ORDER**

Defendants Bank of America Corporation, Banc of America Securities, and Matt Williams have moved to dismiss plaintiffs' second amended complaint. For the reasons stated below, Bank of America Corporation's motion is granted, and Banc of America Securities' and Williams' motion is granted in part and denied in part.

I.　**Factual Background**

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in plaintiff's favor. MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 972 (7th Cir. 1995). According to the allegations in the second amended complaint, plaintiff Abbell Credit Corporation ("Abbell") is the managing agent for plaintiffs Merle Hay Mall ("Merle Hay") and Westgate Village Shopping Center ("Westgate"). Plaintiff J. William Holland ("Holland") is the managing general

41

partner of Merle Hay and Westgate, and is the chairman of Abbell's board of directors. Defendant Banc of America Securities ("BAS") is a securities brokerage enterprise, and a wholly-owned subsidiary of defendant Bank of America Corporation ("BAC"). Matt Williams is a registered securities broker employed by BAS.

Since 1940, Abbell has maintained a banking and investment relationship with BAC and its predecessors. Merle Hay and Westgate maintain a banking relationship and accounts with BAC and BAS. Among its other duties, Abbell is responsible for investing excess cash balances generated by Merle Hay and Westgate. Abbell effectuated these investments through BAS or its predecessor entity. Since 1984, Abbell has invested the excess cash balances by purchasing commercial paper with a maturity date of less than sixty days. For each such transaction, Abbell only purchased short-term commercial paper recommended by BAS as creditworthy and having the highest quality rating of A1/P1. Plaintiffs' investment criteria and strategies have not varied since 1984.

On at least one occasion, Abbell has requested that BAS prepay a piece of commercial paper prior to maturity. At that time, BAS prepaid to Abbell the principal amount of its investment at the discount rate available on the trade date for the number of days from the date of purchase to the refund date. BAS charged Abbell a nominal fee for the prepayment.

BAC has been the dealer of Pacific Gas & Electric ("PG&E") commercial paper since 1985. In October 2000, BAC provided a $1 billion credit facility to underwrite PG&E's commercial paper program. In November 2000, PG&E authorized the public issuance of commercial paper in the total amount of $1.85 billion.

On November 28, 2000, Williams telephoned Abbell's controller, and recommended that

Abbell purchase PG&E commercial paper for Merle Hay and Westgate. Williams stated that PG&E offered a sixty-day commercial paper at a discount rate of 6.4%, with a maturity date of January 29, 2001. Williams further stated that "the PG&E commercial paper was rated A1/P1, that PG&E just basically supplies the West Coast with electricity and that California would never turn out the lights on PG&E."

Based on the information provided by Williams, and his recommendation, Abbell purchased two pieces of PG&E commercial paper on behalf of Merle Hay and Westgate, for a total of approximately $1.95 million. Following the purchase, BAS did not send Abbell a commercial paper memorandum, which would have confirmed the terms of the agreement and included a general description of financial credit available to the issuer. Abbell would typically receive such a commercial paper memorandum seven to ten days after a purchase of commercial paper.

PG&E's financial condition deteriorated in December 2000 and early January 2001. On December 14, 2000, BAS's energy analysts stopped recommending PG&E commercial paper as creditworthy. In early January 2001, Abbell learned of BAC's $1 billion credit facility, and that that credit facility formed the primary reason for PG&E's commercial paper's A1/P1 rating. Between January 8 and January 12, 2001, Abbell sought the prepayment of the PG&E commercial paper from Williams, who declined. On January 15, 2001, Williams advised Abbell that the commercial paper could not be prepaid, and that the market price was $0.75 per purchase dollar. On January 17, 2001, the PG&E commercial paper was downgraded to junk status, and PG&E defaulted on the commercial paper set to mature on that date. Eventually, on January 22, 2001, Abbell sold the PG&E commercial paper to BAS for $0.50 per purchase dollar.

This lawsuit followed. Plaintiffs' second amended complaint alleges claims under Section 10(b) of the Securities Exchange Act of 1934 against all defendants, and alleges claims under Section 12(1) of the Securities Act of 1933, the Illinois Securities Law, and claims of fraud, negligence, and breach of contract against BAS and Williams.

**II. Discussion**

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must consider "whether relief is possible under any set of facts consistent with the allegations of the plaintiff's complaint." Pokuta v. Trans World Airlines, Inc., 191 F.3d 834, 839 (7th Cir. 1999). That is, if it is possible to hypothesize a set of facts that would entitle the plaintiff to relief, consistent with the allegations in the complaint, dismissal under Rule 12(b)(6) is inappropriate. See Graehling v. Village of Lombard, Ill., 58 F.3d 295, 297 (7th Cir. 1995). "[A]lthough plaintiffs can plead conclusions, the conclusions must provide the defendant with at least minimal notice of the claim." Jackson v. Marion County, 66 F.3d 151, 154 (7th Cir. 1995). A plaintiff can "plead himself out of court by alleging facts which show that he has no claim." Id.

**A.  Existence of a Duty**

Plaintiffs seek to hold defendants liable for failing to disclose that BAC provided a credit facility to PG&E, that BAC was the underwriter dealer of the PG&E commercial paper, and that BAC would profit from sales of PG&E commercial paper. According to plaintiffs, these omissions led plaintiffs to believe that PG&E was in sound financial condition when it was not. BAS and Williams argue that all claims against them should be dismissed because the second amended complaint does not allege that they had a duty to disclose the information. BAC also argues that it had neither a direct duty to disclose the information to plaintiffs, nor a duty to

4

ensure that BAS disclosed the information.

Several of plaintiffs' claims in the second amended complaint require proof of a duty. An omission of a material fact is actionable under Section 10(b) and Rule 10b-5 only if the defendant has a duty to disclose that fact. Chiarella v. United States, 445 U.S. 222, 230 (1980); Congregation of the Passion v. Kidder Peabody & Co., 800 F.2d 177, 182 (7th Cir. 1986). In addition, a common law fraud claim based on an omission or concealment of a material fact requires there to have been a duty to speak. Lidecker v. Kendall College, 550 N.E.2d 1121, 1124 (Ill. App. Ct. 1990); Warner v. Lucas, 541 N.E.2d 705, 706 (Ill. App. Ct. 1989). Finally, duty is an element of any negligence claim. See Advincula v. United Blood Servs., 678 N.E.2d 1009, 1015 (Ill. 1996).

A fiduciary duty arises between a broker and a customer only when the dealings between them "presuppose a special trust or confidence." Congregation of the Passion, 800 F.2d at 182. Thus, a broker generally is not the fiduciary of his customer unless the customer entrusts the broker with discretion to select the customer's investments. Carr v. CIGNA Securities, Inc., 95 F.3d 544, 547 (7th Cir. 1996). The second amended complaint alleges that Abbell had been investing in commercial paper through BAS or its predecessor since 1984, and that Abbell relied upon BAS and the BAS representative exclusively for information and recommendations relating to investments in commercial paper. At this stage in the proceedings, the court cannot say that it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims against BAS and Williams that would entitle them to relief. These allegations are sufficient to withstand a motion to dismiss based on a lack of duty as to the claims against BAS and Williams.

The court's conclusion is different as to plaintiffs' claim against BAC. The court

disagrees with plaintiffs' claim that BAC owed them a direct duty to disclose information regarding its role as underwriter and dealer of the PG&E commercial paper, and PG&E's financial problems. While plaintiffs may have maintained a banking and investment relationship with BAC dating from 1940, they do not allege that they had any contact with BAC relating to the transaction at issue, other than that payment for the commercial paper was made from plaintiffs' BAC bank accounts and that the commercial paper then was "delivered to Bank of America safekeeping."[1] Plaintiffs do not allege that BAC solicited them to buy the PG&E commercial paper, or that plaintiffs sought BAC's advice on the transaction. The court is not aware of any duty of a bank to monitor how its customers use funds on deposit with the bank, or to monitor the types of instruments it stores for customers. Plaintiffs' use of BAC's banking services in processing their purchase of PG&E commercial paper is not a contact sufficient to impose on BAC a duty to review plaintiffs' investment decision and make disclosures relating to that decision.

Nor did BAC have a duty to ensure that its subsidiary, BAS, disclosed information to plaintiffs. As a general rule, a parent corporation is not liable for the acts or omissions of its subsidiary. See United States v. Bestfoods, 524 U.S. 51, 61 (1998). Although a parent corporation has the power to control its subsidiary, see Esmark, Inc. v. N.L.R.B., 887 F.2d 739, 757 (7th Cir. 1989), that power does not translate into a duty to control. The second amended complaint does not allege, and plaintiffs do not argue, that corporate formalities should be disregarded in this case. Because Count VIII does not allege an omission of a material fact that BAC was obligated to disclose, it does not state a claim against BAC under Section 10(b) and

---

[1] This information is contained in confirmation documents attached as exhibits to the second amended complaint, and is therefore part of the complaint. See Fed. R. Civ. P. 10(c).

Rule 10b-5 that could be granted. Accordingly, Count VIII is dismissed.

**B.     Section 10(b) and Rule 10b-5 (Counts II and VIII)**

BAS and Williams contend that Count II should be dismissed because plaintiffs fail to satisfactorily explain why Williams' statement that the PG&E commercial paper had an A1/P1 rating was misleading, as required by the Private Securities Litigation Reform Act ("PSLRA"). See 15 U.S.C. § 78u-4(b)(1). Plaintiffs respond that the second amended complaint alleges that Williams' representation that the PG&E commercial paper was rated A1/P1 was misleading because Williams failed to disclose that this rating was based on BAC's credit facility rather than on PG&E's financial stability, that BAC was the underwriter and dealer of the PG&E commercial paper, and that BAC would profit from sales of PG&E commercial paper. This explanation is sufficient to withstand a motion to dismiss. BAS and Williams may find plaintiffs' explanation unconvincing, but the issue of whether a statement or omission is material requires a "highly fact-dependent analysis" that in this case is unsuitable for decision at this early stage of litigation. See Searls v. Glasser, 64 F.3d 1061, 1066 (7th Cir. 1995).

BAS and Williams also challenge Count II on the basis that plaintiffs fail to sufficiently allege that defendants acted with scienter. The PSLRA requires plaintiffs in securities fraud cases to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The Seventh Circuit has yet to address just how rigorous this pleading standard is. Cases in the Northern District of Illinois have generally followed the Second Circuit's pleading standard, which requires plaintiffs to allege facts either (1) showing that the defendant had both motive and opportunity to commit

fraud; or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness. See, e.g., In re Westell Techs., Inc., No. 00 C 6735, 2001 WL 1313785, at *10 (N.D. Ill. Oct. 26, 2001); Danis v. USN Communications, Inc., 73 F. Supp. 2d 923, 937 (N.D. Ill. 1999); Rehm v. Eagle Fin. Corp., 954 F. Supp. 1246, 1253 (N.D. Ill. 1997).

To show strong circumstantial evidence of recklessness, a plaintiff must point to "highly unreasonable" conduct: "an extreme departure from the standards of ordinary care...to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Rehm, 954 F. Supp. at 1255. Plaintiffs argue that the complaint alleges strong circumstantial evidence of recklessness against BAS and Williams in that PG&E's financial instability was an objectively obvious danger that BAS and Williams knew about or should have known about through their close relationship with PG&E. The second amended complaint also alleges that BAS knew or should have known about PG&E's financial instability "[b]ased on Bank of America's position as the lead underwriter dealer of the commercial paper program and BAS's position as seller of the commercial paper." These allegations are insufficient to establish strong circumstantial evidence of recklessness on the part of Williams and BAS. Contrary to plaintiffs' argument, the second amended complaint does not allege that BAS and Williams had any relationship with PG&E. More importantly, the second amended complaint imputes BAC's knowledge to its subsidiary without providing any concrete factual basis for doing so.

Nor do plaintiffs sufficiently allege scienter by showing that BAS and Williams had a motive and opportunity to defraud. Simply alleging a motive and opportunity is not enough to satisfy the scienter requirement of the PSLRA; the facts alleged still must give rise to a strong inference of scienter. See 15 U.S.C. § 78u-4(b)(2); see also Chu v. Sabratek Corp., 100 F. Supp.

8

2d 815, 823 (N.D. Ill. 2000). Plaintiffs contend that Williams and BAS were motivated to conceal material facts by the profits they and BAC would earn in selling PG&E commercial paper. However, a plaintiff cannot allege scienter based merely on motivating factors that would be true for nearly all companies; it is presumed that defendants act in their economic self-interest. Rehm, 954 F. Supp. at 1253; see also, e.g., Phillips v. LCI Int'l, Inc., 190 F.3d 609, 621-23 (4th Cir. 1999) (desire to retain position on corporation's board and obtain higher stock price constituted insufficient motive); In re Brightpoint, Inc. Secs. Litig., No. IP99-0870-C-H/G, 2001 WL 395752, at *14 (S.D. Ind. Mar. 29, 2001 (desire to gain reputational and monetary benefits from positive public perception of company constituted insufficient motive); In re Next Level Sys., Inc., No. 97 C 7362, 1999 WL 387446, at *9 (N.D. Ill. Mar. 31, 1999) (desire to maintain reputation in capital markets and retain access to financing constituted insufficient motive).

Plaintiffs also argue that Williams and BAS were motivated to defraud by their desire to avoid financial exposure caused by PG&E's deteriorating financial condition. A subsidiary's desire to benefit its parent could constitute a valid motivation. See Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 771-72 (1984) ("the subsidiary acts for the benefit of the parent...[I]n reality a parent and a wholly owned subsidiary always have a 'unity of purpose or a common design.'"). However, plaintiffs' argument on this point requires the court to assume the very fact that plaintiffs are trying to establish: plaintiffs seek to show that BAS and Williams knew of PG&E's financial instability by arguing that BAS and Williams were trying to help BAC avoid financial exposure due to PG&E's financial instability. Although BAS and Williams undoubtedly had the opportunity to defraud plaintiffs, given the longstanding investment relationship that plaintiffs allege, the motives plaintiffs allege do not rise to the level

9

that permits a strong inference of scienter. Therefore, Count II must be dismissed.

### C. Securities Act of 1933, Section 12(1) (Count III)

BAS and Williams next seek the dismissal of Count III of the second amended complaint, which alleges that BAS and Williams offered and sold unregistered securities in violation of Section 12(1) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(1). BAS and Williams argue that plaintiffs' earlier statements in this case that the commercial paper was exempt from the registration requirement constitute a judicial admission on the issue, and that in any event, the PG&E commercial paper was not required to be registered.[2] BAS and Williams contend that the following of plaintiffs' statements, made in plaintiffs' motion to reconsider this court's order dismissing a portion of their first amended complaint, constitute judicial admissions: "The PG&E Commercial Paper was exempt from the registration requirements under Section3(a)(3) and therefore exempt from the prospectus requirement," and "The reason why a formal prospectus was not issued is because the commercial paper was and is exempt from the registration requirements of the statute under Section 3(a)(3)." BAS and Williams argue that these statements prevent plaintiffs from now claiming that the PG&E commercial paper was subject to the registration requirements.

The court disagrees that plaintiffs' statements constitute judicial admissions. Counsel's legal conclusions do not constitute judicial admissions. See Dabertin v. HCR Manor Care, Inc.,

---

[2] BAS and Williams also take issue with the allegation in Count III that they offered and sold unregistered securities by offering to "prepay" the PG&E commercial paper on January 15, 2001. Plaintiffs appear to have abandoned this portion of their claim, since they do not respond to defendants' argument that defendants' offer to buy the commercial paper from plaintiffs prior to maturity would make defendants purchasers in that transaction, rather than sellers.

10

68 F. Supp. 2d 998, 1000 (N.D. Ill. 1999). In addition, Federal Rule of Civil Procedure 8(e)(2) allows plaintiffs to pursue inconsistent theories of recovery in the same lawsuit. Thus, a claim made early in a lawsuit that is later superceded by an inconsistent one is not a judicial admission. Moriarty v. Larry G. Lewis Funeral Dirs., Ltd., 150 F.3d 773, 777-78 (7th Cir. 1998). Plaintiffs' argument supporting their claim of a violation of Section 12(2) of the Securities Act of 1933 does not prevent them from now claiming a violation of Section 12(1).

BAS and Williams also argue that the second amended complaint does not contain allegations that the PG&E commercial paper was required to be registered, and argue that plaintiffs must rebut a presumption that commercial paper with a maturity under nine months is exempt from the registration requirements. Section 3(a)(3) of the 1933 Securities Act exempts from registration "[a]ny note...which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which has a maturity at the time of issuance of not exceeding nine months..." 15 U.S.C. § 77c(a)(3). This exemption has been interpreted to apply only to short-term, prime quality negotiable commercial paper that is of a type not ordinarily purchased by the general public. See Sanders v. John Nuveen & Co., 463 F.2d 1075, 1079-80 (7th Cir. 1972). The burden of establishing an exemption is on the party that claims it. Securities and Exch. Comm'n v. Ralston Purina Co., 346 U.S. 119, 126 (1953).

At this stage, reading the second amended complaint in the generous light that it must, the court finds that the allegations in the second amended complaint could support plaintiffs' position that the PG&E commercial paper was subject to the registration requirement. Plaintiffs allege that BAS and Williams sold PG&E commercial paper, an unregistered security, and that that sale violated the prohibition against sales of unregistered securities. Since a security with a

11

maturity of less than nine months is not necessarily exempt from the registration requirement, plaintiffs do not plead themselves out of court by alleging the short-term nature of the PG&E commercial paper. BAS' and Williams' motion to dismiss Count III is denied.

### D. Illinois Securities Act (Count IV)

BAS and Williams next argue that plaintiffs' claim under the Illinois Securities Law should be dismissed because it is not pled with particularity, as required by Federal Rule of Civil Procedure 9(b). The allegation in the second amended complaint that defendants "engaged in deceptive practices" in violation of the Illinois Securities Law is identical to plaintiffs' claim in their first amended complaint, a claim that BAS and Williams did not challenge in their first motion to dismiss. BAS and Williams nevertheless contend in their reply brief that they have not waived this challenge. According to BAS and Williams, the second amended complaint removes an allegation that Williams represented the PG&E commercial paper to be creditworthy from the factual background section of the first amended complaint, a change which in turn impacts the deceptive practice allegation in the Illinois Securities Law claim.

In their motion to dismiss the second amended complaint, however, BAS and Williams did not challenge plaintiffs' new characterization of Williams' statements as applied to the Illinois Securities Law claim, but rather confined their challenge to the vagueness of the allegation of "deceptive practice." This argument should have been brought in the motion to dismiss the first amended complaint; since it was not, it is waived. See Fed. R. Civ. P. 12(g). BAS' and Williams' argument regarding the effect of the changed factual background section, appearing for the first time in their reply brief, is also waived. See Estate of Phillips v. City of

12

Milwaukee, 123 F.3d 586, 597 (7th Cir. 1997); Petri v. Gatlin, 997 F. Supp. 956, 977 (N.D. Ill. 1997).

### E. Fraud (Count V)

BAS and Williams contend that Count V, alleging fraud, is fatally deficient under Rule 9(b) because it does not specify the content of the alleged failure to disclose material facts or misrepresentation. The court disagrees. Rule 9(b)'s particularity requirement means supplying the "who, what, when, where, and how: the first paragraph of any newspaper story." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990). Essentially, a plaintiff must specify which defendant "said what to whom and when." Ackerman v. Northwestern Mut. Life Ins. Co., 172 F.3d 467, 471 (7th Cir. 1999). The second amended complaint alleges that in recommending that plaintiffs purchase PG&E commercial paper, Williams failed to inform plaintiffs that BAC's credit facility formed the primary reason for the commercial paper's A1/P1 rating, a fact that plaintiffs claim would have been material to an assessment of whether the commercial paper was creditworthy. This allegation adequately supplies the "what," as required by Rule 9(b).

BAS and Williams also argue that Count V fails to allege the elements of a common law fraud claim. To establish common law fraud under Illinois law, a plaintiff must show that: (1) the defendant made a false statement of material fact, (2) the defendant knew that the statement was false, (3) the defendant made the statement intending to induce the plaintiff to act, (4) the plaintiff relied on the truth of the statement, and (5) the plaintiff's damages resulted from that reliance. Connick v. Suzuki Motor Co., 675 N.E.2d 584, 591 (Ill. 1996). BAS and Williams contend that the second amended complaint does not allege facts that Williams knew to be false

13

or that he intended to induce plaintiffs to act on his false statement. The second amended complaint alleges that Williams called Abbell's controller to solicit Abbell's business, and in making his recommendation that Abbell purchase PG&E commercial paper:

> knowingly failed to inform [Abbell's controller] of material facts and misrepresented the material facts regarding Bank of America and BAS's due diligence investigation of PG&E, PG&E's creditworthiness and the basis for the A1/P1 rating assigned to PG&E's Commercial Paper.

These allegations are sufficient to withstand a motion to dismiss.

### F.  Breach of Contract (Count VII)

Finally, BAS and Williams argue that Count VII, alleging breach of contract, should be dismissed because plaintiffs fail to allege that they performed their obligations under the contract. Defendants presented this argument in their initial motion to dismiss, albeit obliquely, in the context of arguing that plaintiffs had not alleged the existence of a contract. As this court previously ruled, under liberal federal notice pleading rules, plaintiffs have sufficiently alleged the elements of a breach of contract claim at this stage. See Petri, 997 F. Supp. at 965-66 (finding that hypothesis that plaintiffs had fulfilled their contractual obligations was consistent with allegations in complaint). The motion to dismiss Count VII is denied.

**ORDERED:** BAS' and Williams' motion to dismiss is granted in part and denied in part: the motion is granted as to Count II, and denied as to Counts III through VII. BAS' and Williams' motion for judgment on the pleadings is denied, as the pleadings are not yet closed. See Fed. R. Civ. P. 12(c). BAS' and Williams' motion to strike Count I is granted. BAC's motion to dismiss is granted. BAC's motion to strike is denied as moot.

ENTER:

George W. Lindberg
Senior United States District Judge

DATED: FEB 2 8 2002